# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ALI BABAKHANI,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-26-705-SLP** |
| ) | |
| **CHRIS GANTT, et al.,** ) | |
| ) | |
| **Respondents.**[1] ) | |

## REPORT AND RECOMMENDATION

Petitioner Ali Babakhani, an Iranian citizen proceeding *pro se*,[2] filed a petition for

a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") and accompanying

memorandum of law in support ("Memorandum") challenging his detention by the U.S.

Immigration and Customs Enforcement ("ICE").[3] (Docs. 1-2).[4] Chief United States

District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for

---

[1] Chris Gantt replaced Scarlet Grant as Warden of Cimarron Correctional Facility. Therefore, the Court substitutes him as a Respondent in this matter pursuant to Federal Rule of Civil Procedure 25(d).

[2] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But the court cannot serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[3] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 1, at 1).

[4] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C).  (Doc. 4).  In accordance with the expedited briefing schedule, (Doc. 6), Respondents timely filed a Response to the Petition.[5]  (Doc. 8).  Petitioner timely filed a reply.  (Doc. 9).  For the reasons set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and **released from custody immediately.**

## I.      Factual Background and Procedural History

Petitioner is a citizen of Iran who entered the United States on or around October 12, 2023.  (Doc. 8, at Ex. 1, at 1).  On or about November 7, 2023, Petitioner was convicted in the United States District Court for the Western District of Texas of Entry Without Inspection and sentenced to five months' imprisonment.  (*Id.* at 2).  On or about May 13, 2024, Petitioner was detained by ICE and placed into immigration proceedings.  (*Id.*; *see* Doc. 1, at 6).  An immigration judge ordered Petitioner removed from the country on July 23, 2024.  (Doc. 8, at Ex. 1, at 2; Doc. 1, at 6).  Petitioner waived appeal of his removal order at the removal hearing.  (Doc. 8, at Ex. 2, at 4; Doc. 1, at 2).  Petitioner has remained in ICE custody from the date of his removal order until today.  (Doc. 1, at 6).

Respondents allege that, during Petitioner's detention, he received a custody review where Respondents determined Petitioner should remain in ICE custody.  (Doc. 8, at Ex. 1, at 2).  On or about October 11, 2024, ICE's Dallas Field Office submitted a travel document request to ICE's "Headquarters Removal International Operations Division,"

---

[5] The response was not filed on behalf of Respondent Scarlet Grant, now-former Warden of the Cimarron Correctional Facility, because she is not a federal official.  (Doc. 8, at 1 n.1).  The undersigned concludes that a separate response from Scarlet Grant – or Chris Gantt, the current warden – is not necessary to resolve this matter.

and soon after also submitted a request for funds required by Iran to issue Petitioner's travel documents. (*Id.* at 2). On March 27, 2025, ICE sent a money order for the funds to the Iranian Consulate, and on April 10, 2025, also sent the Iranian Consulate the travel document request. (*Id.* at 3). Despite ICE's "[c]ontinued outreach" to Iran during these months, Iran has not issued Petitioner's travel documents. (*Id.*) The most recent update that Respondents provide regarding efforts toward Petitioner's removal is "an Iranian government interview with" Petitioner that was "scheduled for October 22, 2025," but it is unclear whether this interview occurred. (*Id.*)

On September 4, 2025, Petitioner filed a Motion to Reopen Proceedings and Stay Removal with the immigration court; the court denied the motion on September 15, 2025. (*Id.*) Petitioner has a pending appeal of this denial filed with the Board of Immigration Appeals. (*Id.*)

## II.    Petitioner's Claims and Respondents' Responses

Petitioner raises three grounds for relief: (1) prolonged detention pursuant to *Zadvydas v. Davis* and *Demore v. Kim*; (2) prolonged detention in violation of the Fifth Amendment Due Process Clause; and (3) violation of the Immigration and Nationality Act ("INA") and related ICE regulations. (Doc. 1, at 6). For relief, Petitioner seeks immediate release on an Order of Supervision ("OOS"). (*Id.* at 7).

Respondents argue that (1) Petitioner did not meet his burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future, and even if he had, Respondents have rebutted that showing, (Doc. 8, at 7-10); (2)

3

Petitioner's continued detention does not violate the Fifth Amendment, (*id.* at 10); and (3) Petitioner's INA and regulatory argument is baseless, (*id.* at 10-11).

### III.  Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

### IV.  Legal Framework for the Detention or Release of Aliens Subject to a Final Order of Removal

Title 8, Section 1231(a)(2)(A) of the United States Code mandates that "the Attorney General shall detain" an alien who is ordered to be removed from the country. However, the length of detention cannot be indefinite: in general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A).  This is known as the "removal period," and begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) "the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime).  *Id.*; *see Zadvydas*, 533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a

4

final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody."). Thus, Petitioner's removal period began on July 23, 2024, when Petitioner waived appeal of his order of removal, and it ended ninety days later.

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision." 8 U.S.C. § 1231(a)(3). However, the Government retains discretionary authority to detain some aliens "beyond the removal period." § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)).

Section 1231(a)(6) does not specify how long relevant aliens may be detained beyond the removal period. However, the Supreme Court in *Zadvydas v. Davis* held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" because it would directly implicate the Fifth Amendment's Due Process Clause. *Id.* at 690. The Court consequently held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Court further specified that detention is presumptively reasonable for only six months beyond the original 90-day removal period. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.

5

**V.    Petitioner Is Entitled to Habeas Relief Because His Continued Detention Violates *Zadvydas*.**

Petitioner is presently detained under 8 U.S.C. § 1231(a)(6) because his removal period expired in 2024.  Moreover, Petitioner's uninterrupted detention dating to 2024 far exceeds the six-month presumptively reasonable length of detention outlined in *Zadvydas*. Thus, Petitioner may initiate his *Zadvydas* claim by "provid[ing] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Petitioner has met his burden.  To begin, Petitioner explains that he has been in ICE custody under a final order of removal since 2024.  (Doc. 1, at 6).  "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s]." *Zadvydas*, 533 U.S. at 701.  Petitioner's seventeen-month-long period of post-removal detention at the time he filed his Petition accordingly shrinks the reasonably foreseeable future Respondents have to remove him.

Petitioner also highlights that "all attempts by . . . ICE to retrieve [his] travel document from [Iran] remain futile."  (Doc. 1, at 7).  In his Memorandum, he adds to this claim, alleging "ICE [has] fail[ed] to take action to secure travel documents [from Iran] for a prolonged period."  (Doc. 2, at 6).  This Court has previously concluded that a petitioner provided "good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future" in part because the record showed "ICE [was] unable to secure [the petitioner's] travel documents" over the course of multiple years, and "[a]t best, [] efforts" by ICE to remove the petitioner "ha[d] been sporadic"  *Khaliq v. Noem*, No.

6

CIV-25-1154-SLP, --- F. Supp. 3d ----, 2026 WL 196631, at *8 (W.D. Okla. Jan. 26, 2026). The Court should conclude the same here.

While Respondents correctly note that "a simple delay in receiving travel documents is insufficient" to initiate a *Zadvydas* claim, this is a mischaracterization of Petitioner's position.  (Doc. 8, at 8) (citing *Head v. Keisler*, No. CIV-07-402-F, 2007 WL 4208709, at *4 (W.D. Okla. Nov. 26, 2007)).  In *Head*, "all that Petitioner ha[d] shown as evidence that there [wa]s no significant likelihood of his removal in the reasonably foreseeable future, [wa]s a delay in the issuance of the necessary travel documents."  2007 WL 4208709, at *4.  The petitioner in that case had also only been detained six months when he filed his habeas petition.  *Id.*  Here, Petitioner has been detained for significantly longer, but more importantly his allegations relating to "futile" document requests to Iran and sporadic removal efforts by ICE are sufficient to advance his claim because they allege a lack of "meaningful, ongoing efforts by [ICE] to remove Petitioner" in recent months.  *Khaliq*, 2026 WL 1966312, at *8; *see also Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025) (petitioner met burden where "ICE made no efforts to remove" petitioner for seven months).  Indeed, Respondents do not seriously dispute Petitioner's claim that no recent efforts have been made to secure Petitioner's travel documents: Respondents' attached declaration only vaguely states that "[c]ontinued outreach was made to the Iranian government" while referencing a scheduled interview that was meant to take place over seven months ago.  (Doc. 8, at Ex. 1, at 3).

Respondents do not provide any evidence sufficient to rebut Petitioner's showing. As stated above, Respondents provide no evidence of efforts to secure Petitioner's removal

in the seven months following Petitioner's scheduled interview on October 22, 2025, or that this interview actually occurred. (*Id.*)  They also note that the travel document request they sent to Iran on April 10, 2025, "remains pending." (*Id.*)  Respondents' additional argument that removal is significantly likely due to the number of removals to Iran in 2025 and 2026, (*id.*), is similarly unpersuasive because such figures do not "provide[] . . . evidence of progress . . . made towards removal of Petitioner *himself.*"  *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) (emphasis added).

Finally, Respondents state that Petitioner's removal to Iran remains significantly likely in the reasonably foreseeable future despite "current events in Iran." (Doc. 8, at Ex. 1, at 3).  The undersigned is unconvinced.  Courts around the country have expressed doubt that removal to Iran remains significantly likely in the reasonably foreseeable future for petitioners given the current armed conflict between the United States and Iran.  *See, e.g.*, *Khodabakhsh v. English*, No. 3:26cv161 DRL-SJF, 2026 WL 1560574, at *3 (N.D. Ind. May 22, 2026) (granting relief under *Zadvyadas* and noting "[t]he court is also aware of the recent military conflict between the United States and Iran and the present uncertainty of a resolution, which reasonably impedes any removal to Iran for the foreseeable future."); *Anjomshoa v. Oldham Cnty. Jail*, No. 3:26-CV-020-CHB, 2026 WL 1034403, at *4 (W.D. Ky. Apr. 16, 2026) (granting relief under *Zadvydas* and noting "the Court takes judicial notice of the current miliary conflict between the United States and Iran that began on February 28, 2026"); *see also Bahadorani v. Bondi*, No. 25-6177, Doc. 36, at 2-3 (10th Cir. Mar. 25, 2026) (remanding *Zadvyadas* case to Western District of Oklahoma because

8

"armed conflict" between U.S. and Iran "potentially overtook the district court's finding of fact on significant likelihood of removal"). Respondents provide no reason to doubt these courts' analyses, and to the contrary concede that "[t]he status of removals [to Iran] is on hold, due to current events in Iran." (Doc. 8, at Ex. 1, at 3). Thus, the undersigned concludes that Respondents have failed to rebut Petitioner's *Zadvydas* claim and relief is warranted.

**VI.     The Court Should Decline to Address Petitioner's Remaining Claims.**

Because the undersigned recommends habeas relief based on Petitioner's Ground One, the Court should decline to address Petitioner's remaining arguments as to how his detention is otherwise unlawful. *See Sanchez v. Bondi*, No. 1:25-cv-02287-CNS, 2025 WL 3484756, at *1 (D. Colo. Dec. 4, 2025) (declining to reach petitioner's remaining claim after granting relief on other claim); *see also Ye v. Bondi*, No. CIV-25-1230-D, 2025 WL 3485420, at *2 n.2 (W.D. Okla. Dec. 4, 2025) (acknowledging the Magistrate Judge did not consider petitioner's remaining arguments for habeas relief after recommending habeas relief on one claim).

**VII.    Recommended Ruling and Notice of Right to Object**

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241.** The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, subject to an appropriate order of supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and

supervision under release conditions that may not be violated.").  The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order.

**The court advises the parties of their right to object to this Report and Recommendation by June 12, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[6]  The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 5th day of June, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").