**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ALI BABAKHANI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-26-705-SLP |
| | ) | |
| CHRIS GANTT, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**O R D E R**

Before the Court is the Report and Recommendation (R&R) [Doc. No. 11] of United States Magistrate Judge Amanda L. Maxfield, recommending the Court grant Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2241.  Respondents have filed an Objection [Doc. No. 12] and the matter is at issue. [1]  The Court reviews de novo any portion of the R&R to which Respondents have made specific objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  Having conducted that review, and for the reasons that follow, the Court ADOPTS the R&R and GRANTS IN PART the Petition.

**I.      Introduction**

Petitioner, appearing pro se, brings a petition for habeas relief pursuant to 28 U.S.C. § 2241 claiming that he is in custody "in violation of the Constitution or laws . . . of the United States," 28 U.S.C. § 2241(c)(2), and seeking release from civil immigration detention.  Petitioner advances multiple theories of relief.  Petitioner first argues that his

---

[1] Citations to the parties' briefing submissions and record reference the Court's ECF pagination.

continued detention is unlawful under the Supreme Court's decisions in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Demore v. Kim*, 510 U.S. 538 (2003).  Petitioner also argues that his detention is violative of his Fifth Amendment Due Process rights.  Finally, Petitioner asserts that ICE violated their own regulations contained in the Immigration and Nationality Act.

Petitioner is subject to an order of removal from the United States as a result of a federal-court conviction.  His statutory ninety-day removal period expired more than twenty (20) months ago.  Petitioner has been continuously detained by the United States Immigrations and Customs Enforcement (ICE) since 2024.

Petitioner seeks his release from continued immigration detention because he argues there is no significant likelihood of his removal in the reasonably foreseeable future.  As of the date of this Order, Petitioner has been detained for approximately twenty-three (23) months.

The Magistrate Judge recommended granting the Petition.  The Magistrate Judge found, under *Zadvydas*, that there is not a significant likelihood of Petitioner's removal to Iran in the reasonably foreseeable future.

In their Objection, Respondents argue that the Magistrate Judge erred in finding that Petitioner met his initial burden to establish entitlement to relief under *Zadvydas*.

## II.    <u>Factual Record</u>

The following facts are undisputed.  Petitioner is a citizen of Iran.  *See* [Doc. No. 8-1] at ¶ 3.  Petitioner entered the United States on or about October 12, 2023 without being admitted or paroled by an immigration official.  On November 7, 2023, Petitioner was

convicted of Entry Without Inspection, violative of 8 U.S.C. § 1325, in the United States District Court for the Western District of Texas.  Petitioner was detained by ICE officials on or about May, 13, 2024.  On July 23, 2024, an immigration judge ordered that Petitioner be removed to Iran.  Petitioner waived appeal of the removal order while at the removal hearing.

Respondents submitted the Declaration of David Ramirez, a Deportation Officer employed by ICE, to establish certain facts related to ICE's removal efforts and Petitioner's detention history.  *See* Ramirez Decl. [Doc. No. 12-1].  After he was ordered removed, Petitioner's case was sent to ICE's Enforcement and Removal Operations (ERO) to execute the order of removal.  *Id.*, ¶ 7.[2]  In October of 2024, a travel document request, as well as an agency request for a travel fee that was a necessary prerequisite before Iran could issue a travel document, was sent to the Headquarters Removal International Operations Division (HQ RIO).  *Id.*, ¶ 9.  A money order was received by ERO for the travel fee on November 29, 2024, but could not be located during a follow-up in February 2025.  *Id.*, ¶ 10.  A new money order was received on March 18, 2025, and the money order was submitted to the Interest Section at the Iranian Consulate on March 27, 2025.  *Id.*, ¶¶ 10-11.

On April 10, 2025, a travel document request was sent to the Iranian Consulate, and the travel document request has since remained pending. *Id.*, ¶¶ 12, 17.  According to Mr. Ramirez, "[c]ontinued outreach was made to the Iranian government and an Iranian

---

[2] ERO is an operational branch of ICE.  *See* https://www.ice.gov/about-ice.

government interview with Babakhani was scheduled for October 22, 2025." *Id.*, ¶ 16. Although scheduled over eight (8) months ago, Mr. Ramirez does not indicate whether such an interview occurred.

Mr. Ramirez indicates that around May 28, 2026, Petitioner "was nominated by HQ RIO for placement on an upcoming repatriation charter flight to Iran." *Id.*, ¶ 18. Mr. Ramirez further states that "[b]ased on Government of Iran's willingness to accept its citizens, the number of successful removals ERO has made to Iran in the previous and current Fiscal Years before the temporary pause, and resumed planning of charter flights, [he] believe[s] [Petitioner's] removal is significantly likely in the reasonably foreseeable future." *Id.*, ¶ 20.[3]

## III.    Findings of the Magistrate Judge

The Magistrate Judge granted relief to Petitioner. The Magistrate Judge first noted that what is deemed to be the reasonably foreseeable future for Respondents to remove Petitioner is smaller given the length of Petitioner's post-removal detention. R&R, at 6. The Magistrate Judge then determined that Petitioner met his burden of "providing good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." *Id.* (quoting *Zadvydas*, 533 U.S. at 701).

---

[3] Petitioner filed a Motion to Reopen Proceedings and Stay Removal (Motion) with the on September 4, 2025, which was subsequently denied by an immigration judge on September 15, 2025. *Id.*, ¶¶ 13-14. Petitioner filed an appeal of the order denying the Motion to the Board of Immigration Appeals on September 22, 2025. *Id.*, ¶ 15. Mr. Ramirez represents that the appeal remains pending. *Id.*

4

Finally, the Magistrate Judge found that Respondents did not provide evidence that sufficiently rebutted Petitioner's showing. *See* R&R at 7-9. [4]

## IV.    Respondents' Objections

Respondents only object to the R&R on the basis that Petitioner has not met his burden, under *Zadvydas*, of establishing that his removal to Iran is not significantly likely in the reasonably foreseeable future.

## V.    Discussion

### A.    Legal Framework

Petitioner has been ordered removed from the United States, but his removal was not effected within the statutory 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A). Petitioner, nonetheless, is subject to continued detention after expiration of the removal period pursuant to 8 U.S.C. § 1231(a)(6).[5]    Such detention is civil and nonpunitive. *Zadvydas*, 533 U.S. at 690.

---

[4] Neither party has objected to the Magistrate Judge's recommendation that the Court need not address Petitioner's remaining claims and the Court concurs with that recommendation and dismisses such claims without prejudice.

[5] Section 1236(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [the Secretary of Homeland Security] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

There is no express limitation on the length of an alien's post-removal-period detention under § 1231(a)(6). But in *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) narrowly and imposed "an implicit 'reasonable time' limitation" on such detention to avoid any Fifth Amendment due process issues that could arise from indefinite detention. *Id.* at 682. After *Zadvydas*, an alien can be detained only "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

In applying this limitation in the context of a habeas challenge to continued detention, the ultimate question for the court is "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. Significantly, the decision to be rendered by the Court is not "[t]he choice . . . between imprisonment and the alien 'living at large'" but "between imprisonment and supervision under release conditions that may not be violated." *Id.* at 696.

Reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. A six-month period of detention is presumptively reasonable. *Id.* at 701. After the six-month period has passed, however, the alien has the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the alien makes such a showing, "the [g]overnment must respond with evidence sufficient to rebut the showing." *Id.*

The six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably

foreseeable future." *Zadvydas*, 533 U.S. at 701. Nevertheless, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

The definitive issue addressed in *Zadvydas* is contextually important and bears repeating here: "Whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." *Id*. at 695. As the Supreme Court noted, detention, like that of Petitioner that occurs after the 90-day removal period, "has no obvious termination point." *Id*. at 697.

What constitutes a "significant likelihood of removal" and how to measure the "reasonably foreseeable future," particularly in light of the "rule of relativism" identified in *Zadvydas*, is incapable of any bright-line delineation. Instead the analysis is case-specific and fact driven. For that reason, district courts across the country have utilized an array of approaches in deciding when continued post-removal-period detention of an immigrant becomes unconstitutional and reached varying conclusions.

Courts have looked to whether the mere passage of time is sufficient, [6] whether the petitioner's case fits within certain defined circumstances,[7] or whether the petitioner is

[6] *See, e.g., Wray v. Mukasey*, No. CIV.A.-08-6042-WJM, 2009 WL 1834318 at *5 (D.N.J. June 26, 2009) (noting that "[f]ederal courts disagree as to the extent to which the passage of time can suffice to meet the alien's burden" to show his removal is not reasonably foreseeable and citing cases).

[7] *See, e.g, Ahmed v. Brott*, No. CIV-14-5000-DSD/BRT, 2015 WL 1542131 at *4 (D. Minn. Mar. 17, 2015) (identifying "five types of cases" where courts have found no significant likelihood of removal to include: "(1) where the detainee is stateless and no country will accept him; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign

7

similarly situated to the two petitioners in *Zadvydas*.[8] Within this judicial district, judges, including the undersigned, have also looked to whether the petitioner has demonstrated "institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. 24-464-SLP, 2024 WL 5465749 at *3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025).[9]

The Court is unaware of any Tenth Circuit precedent to address these standards post-*Zadvydas* in the context raised here.[10] Thus, in addressing the current record, the Court focuses on the directives set forth in *Zadvydas* as the guide to its analysis.

country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue" (citing cases)).

[8] *See, e.g., Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1366-67 (N.D. Ga. 2002) (addressing limited circumstances confronted by the Supreme Court in *Zadvydas*, i.e., Zadvydas "had no country" and Ma's country "had no treaty with the United States" and noting Supreme Court's "silence on the practical ramifications of its holding" leaving federal district courts to put "meat on the bones" of the holding and "arrive at standards of reasonableness that . . . make sense"). In *Fahim*, the court concluded that "the reasonableness of detentions pending deportation cannot be divorced from the reality of the bureaucratic delays that almost always attend such removals." *Id*. at 1367.

[9] In *Dusabe*, the petitioner was a citizen of Rwanda and ICE was attempting to affect his removal to the country. A Rwandan Embassy official had advised ICE that it would be issuing travel documents for the petitioner but the review by the Rwandan government had to be completed and would take some time. The evidence included several communications back and forth between ICE and the Rwandan Consulate confirming that review was ongoing and that issuance of travel documents was anticipated. Thus, the delay in *Dusabe* was "a result of Rwanda's slow machinations and not a denial or refusal to accept him." *Id*., 2024 WL 5465749 at *4. Under those facts, this Court concluded that Petitioner had not met his burden to show there was no significant likelihood of his removal in the reasonably foreseeable future. *Id*.

[10] In *Soberanos v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004), the Tenth Circuit dealt with the distinct issue of continued detention "directly associated with a judicial review process that has a definite and evidently impending termination point" and thus was "clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*." In one unpublished decision, the Tenth Circuit denied § 2241 habeas relief under *Zadvydas*, concluding that the petitioner's detention did not "raise the specter of indefinite detention" where the record demonstrated ICE officials were "actively seeking [the petitioner's] removal and there [was] no indication they

      **1.      Petitioner has Shown Good Reason to Believe that There is No Significant Likelihood of Removal in the Reasonably Foreseeable Future**

As an initial matter, there is no dispute that Petitioner has been detained beyond the six-month presumptively reasonable period of detention. Furthermore, as noted above, Petitioner's detention is now at approximately the twenty-three-month (23) mark and continues to grow.

As the Magistrate Judge correctly noted, Petitioner has alleged more than a mere delay in travel documents. *See* R&R, at 7. The Court has previously found a petitioner demonstrated good cause where there is a "lack of meaningful, ongoing efforts by ERO to remove Petitioner. . . ." *See Khaliq v. Noem*, No. CIV-25-1154-SLP, --- F. Supp. 3d ---, 2026 WL 196631, at *8 (W.D. Okla. Jan. 26, 2026). Petitioner has shown good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

In the ensuing twenty-three (23) months since Petitioner's order of removal became final, ICE has been unable to secure travel documents to Iran for Petitioner. The record is void of any meaningful, ongoing efforts by ERO to remove Petitioner to Iran since he was

---

w[ould] not succeed." *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008). In reaching this conclusion, the court noted that it was "troubled" by "the inability of ICE to secure [the petitioner's] removal in a timely manner, even given [the petitioner's] repeated court filings and failure to cooperate." *Id*. The record showed that the petitioner was awaiting deportation to his homeland of Nigeria, that ICE had attempted to obtain travel documents and place the petitioner on a chartered flight to Nigeria "on multiple occasions" and that the main reason the petitioner had not been removed was due to "his repeated court challenges to removal and refusal to cooperate with ICE officials in obtaining a Nigerian passport and other necessary travel documents." *Id*.

9

initially detained.  At best, those efforts appear sporadic, and lack sufficient detail for this Court to find a significant likelihood of removal.

Significantly, ERO notes that Petitioner's travel document request has remained pending since it was originally sent to the Iranian Consulate on April 10, 2025.  ERO did not provide any meaningful updates or show any contact has been made with the Iranian Consulate regarding the status of the travel document request.  While the Respondents note that an interview between Petitioner and the Iranian government was scheduled for October of 2025, they do not provide any evidence that such an interview occurred.  *See* Ramirez Decl. [Doc. No. 12-1], ¶ 16.

Especially mindful of the length of Petitioner's detention, the Court finds Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

### 2. The Evidence Proffered by Respondents Does Not Rebut Petitioner's Showing

Respondents' showing of a significant likelihood of Petitioner's removal in the reasonably foreseeable future primarily focuses on the following statements by Mr. Ramirez: (1) that "Iran is accepting return of its citizens and (2) that there were "12 removals to Iran in Fiscal Year 2024, 109 removals to Iran in Fiscal Year 2025, and *as of January 26, 2026*, there have been 114 removals to Iran."  Ramirez Decl. [Doc. No. 12-1], ¶ 20 (emphasis added).  The representations and data set forth by Respondents does not adequately address the likelihood of removal of Iranian citizens in the current circumstances of this matter.  Since the date of the removal data provided by Respondents,

the United States and Iran have engaged in an armed conflict. While it appears that the situation between the two countries has begun to improve, Respondents provide no evidence that removal of Iranian citizens has resumed. Respondents' indeterminate statement as to ERO's "resumed planning for charter flights" to Iran is insufficient. *Id*. at ¶ 20.

Additionally, ERO asserts that Petitioner "was nominated by HQ RIO for placement on an upcoming repatriation charter flight to Iran." *Id.*, ¶ 18. However, the statement made by Mr. Ramirez is threadbare, as such statement does not indicate when such flight will occur and if Petitioner would be eligible for such a flight without a travel document.

The record lacks any evidence to show that removal of aliens similarly situated to Petitioner (or even removal of aliens to Iran, generally) has been successful in the last three (3) months. Under these circumstances, the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against. *See, e.g., Douglas v. Baker*, No. 25-cv-2243-ABA, 2025 WL 2997585 at *3, 4 (D. Md. Oct. 24, 2025) (finding that passage of time coupled with "the absence of any evidence that the government has used that time to advance efforts to remove" the petitioner demonstrate that detention no longer authorized by *Zadvydas* (citing cases)).

Accordingly, the Court finds that Petitioner's removal is not significantly likely in the reasonably foreseeable future. Petitioner is entitled to habeas relief pursuant to 28 U.S.C. § 2241 as he is in custody "in violation of the Constitution or laws . . . of the United States." *Id*. § 2241(c)(2).

11

## VI.    Conclusion

IT IS THEREFORE ORDERED as follows:

1.     The Court ADOPTS the Report and Recommendation [Doc. No. 11] and GRANTS, in part, the Petition for Writ of Habeas Corpus [Doc. No. 1] to the extent it seeks habeas relief pursuant to 28 U.S.C. § 2241.

2.     The Court ORDERS that Petitioner be released from custody immediately, subject to an appropriate Order of Supervision.[11]

3.     The Court DENIES as MOOT Petitioner's Emergency Motion or Request for Expedited Handling [Doc. No. 10].

IT IS SO ORDERED this 24th day of June, 2026.

_____

SCOTT L. PALK
CHIEF UNITED STATES DISTRICT JUDGE

---

[11] *See Zadvydas*, 533 U.S. at 700 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." (citations omitted)).

12